# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs December 17, 2024

**STATE OF TENNESSEE v. GROVER BEVERLY**

**Appeal from the Circuit Court for Sevier County**
**No. CR-26488-II    James L. Gass, Judge**

FILED

FEB 0 3 2025

Clerk of the Appellate Courts
REc'd By_____

___

### No. E2024-00484-CCA-R3-CD

___

The Defendant, Grover Beverly, was convicted by a Sevier County jury of two counts of rape of a child, for which he received an effective sentence of eighty years' incarceration. On appeal, the Defendant challenges the sufficiency of the convicting evidence. Following our review of the record, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

D. KELLY THOMAS, JR, SP. J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Jessica S. Sisk, Newport, Tennessee, for the appellant, Grover Beverly.

Jonathan Skrmetti, Attorney General and Reporter; Brooke Huppenthal, Senior Assistant Attorney General; James B. ("Jimmy") Dunn, District Attorney General; and Rolfe A. Straussfogel, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

On December 2, 2019, the Sevier County Grand Jury returned an indictment against the Defendant, charging him with two counts of rape of a child. See Tenn. Code Ann. § 39-13-522. The Defendant's case proceeded to a jury trial on September 9, 2021.

Tiffany Beeler testified that she worked as a middle school teacher and taught H.G.[1] ("the victim") while the victim was in sixth grade. On August 15, 2019, Ms. Beeler noticed that the victim was writing a note "when [she] should not have been writing," so Ms. Beeler confiscated the note, admonished the victim that she should not

___

[1] It is the policy of this court to refer to minor victims of sexual abuse by their initials.

write notes in class, and continued teaching her lesson. Ms. Beeler later returned to her desk and read the confiscated note. A redacted version of this note was introduced into evidence, reading, "Dear Mom. Don't tell Dad, but he sexually harasses me. If you think this is a prank, it is the truth." Ms. Beeler promptly called the school's guidance counselor, Courtney Carroll, to ask her to speak to the victim.

Courtney Carroll testified that she worked as a guidance counselor at the victim's middle school. After receiving Ms. Beeler's phone call on August 15, 2019, Ms. Carroll reviewed the note Ms. Beeler confiscated from the victim and called the victim into her office. Ms. Carroll spoke with the victim about her allegations and then called the Department of Children's Services to "report[] the situation to them." Ms. Carroll also informed the school resource officer about the note, who in turn contacted the police.

Bree McGrane testified that she worked for the Department of Children's Services. On August 15, 2019, Ms. McGrane received a referral asking for immediate intervention at the victim's middle school. Ms. McGrane and Pigeon Forge Police Department Detective Mark Vance interviewed the victim and her mother, C.G.,[2] as well as the victim's younger siblings. Ms. McGrane also organized a forensic interview with the victim, which was held four days following her initial interview.

Pigeon Forge Police Department Detective Mark Vance testified that on August 15, 2019, he spoke with Officer McMahan, the school resource officer at the victim's middle school, and learned of the victim's allegations against the Defendant. Detective Vance drove to the victim's middle school and, working with Ms. McGrane, interviewed Ms. Carroll, the victim, and C.G. During his interview with C.G., C.G. asked Detective Vance whether she should respond to a text message she had received from the Defendant. Detective Vance advised C.G. not to speak to the Defendant until Detective Vance talked to him. Detective Vance also advised C.G. to take the victim to the hospital for a physical examination and the completion of a rape kit.

On cross-examination, Detective Vance recalled that he concluded his interviews with Ms. Carroll, the victim, and C.G. at the victim's middle school at approximately 3:15 p.m. Afterwards, he went to the school's parking lot and called the Defendant, who stated that he was unable to meet Detective Vance until later in the evening because he was "in West Knoxville." However, Detective Vance then drove to the Defendant's Pigeon Forge address and found him standing outside his home. Detective Vance arrested the Defendant and took him to the Pigeon Forge Police Department for an interview. Detective Vance stated that he was "irritated" with the Defendant during his interview because the Defendant had lied about his location. During his interview, the Defendant denied that he had raped the victim. Detective Vance also interviewed the victim's grandmother, S.G., shortly after he arrested the Defendant.

---

[2]     In an effort to further protect the victim's identity, we will refer to her relatives by their initials.

Dr. Mary Palmer testified that she was a physician certified in treating victims of child abuse at East Tennessee Children's Hospital. She testified that the victim was treated by Dr. Vanessa Thomas, another physician at East Tennessee Children's Hospital who was unable to testify at trial. Following her examination of the victim, Dr. Thomas concluded that the victim was "an eleven-year-old normally healthy female." Dr. Thomas interviewed the victim regarding her allegations against the Defendant. During this interview, the victim stated, "[The Defendant] tells me I have to suck his pee-pee. He puts his penis in my mouth and bottom."

Rebecca Ratcliff, a forensic interviewer at Safe Harbor Child Advocacy Center of the Smokies, testified that she interviewed the victim on August 19, 2019. A recording of the interview was played for the jury. During her interview, the victim stated that she lived in Pigeon Forge with the Defendant, C.G., S.G., her grandfather, her uncle, and her two siblings. The victim explained that the Defendant was her stepfather, though she had, until recently, believed him to be her biological father.

The victim recalled that on either "Monday or Tuesday" of the previous week, the Defendant approached the victim while she was playing with her siblings in the living room and instructed her to go with him into "the bedroom." The victim stated that C.G. had left the home, that her grandfather was at work, and that S.G. and her uncle were in their rooms. The victim described this bedroom as having "dark windows" and bunkbeds. While she and the Defendant were alone in the bedroom, the Defendant told the victim to "suck his pee-pee." The victim did so, and approximately two minutes later, the Defendant told the victim to "play with his pee-pee." The victim stated that the Defendant soon thereafter "put [his penis] in my bottom." The victim stated that this was painful and made her feel "uncomfortable." When it "stopped," the Defendant instructed the victim to "go away and play" with her siblings. The victim recalled that she went to the bathroom to clean "white stuff" off herself before returning to the living room.

The victim stated in her interview that the Defendant had forced her to perform oral sex on him on multiple occasions. She stated that she always felt "horrible" and "angry" afterwards. The victim also recalled that on one occasion, the Defendant showed her a video on his cell phone in which C.G. performed oral sex on the Defendant. The victim stated that the Defendant showed her this video to teach her "how to suck his pee-pee."

The victim's mother, C.G., testified that prior to August 15, 2019, the Defendant had been her boyfriend, and that the two had lived together in Pigeon Forge along with C.G.'s parents, C.G.'s brother, the victim, and the Defendant's two children. As C.G. left work on August 15, 2019, she received a phone call from Detective Vance asking her to come to the victim's school. There, Detective Vance interviewed C.G. and informed her of the allegations the victim had made against the Defendant. C.G. stated that she felt

"everything I could think of," including "shock," "denial," anger, and sadness. She recalled that the Defendant "kept texting and calling" her during her interview. C.G. testified that she ultimately answered one of the Defendant's calls and asked whether he had raped the victim. The Defendant said that he had not.

C.G. stated that she knew that the Defendant had taken a video of her performing oral sex on him with his cell phone. She testified that she had asked the Defendant to delete the video on multiple occasions and that the Defendant had refused to do so.

The victim's grandmother, S.G., testified that she worked from home "building" websites. Because "the kids are loud and interrupt me," S.G. typically locked her bedroom door and wore noise-cancelling headphones to focus on her work. S.G. testified that it would have been "very possible" for the Defendant to take the victim into a private room for several minutes without her noticing.

The victim testified on cross-examination that on a day "just before school started in 2019," she was playing with her siblings in the living room when she saw the Defendant "motion" for her to "come into the bedroom." The victim recalled that when she entered the bedroom, the Defendant began removing his clothes and instructed her to "suck his pee-pee." She stated that this was not the first time the Defendant had forced her to perform oral sex on him. However, on this occasion, she recalled that after "a minute or two," the Defendant instructed the victim to turn around and "put [his penis] in my bottom." The victim stated that she felt a "sharp pain," began crying, and told the Defendant to stop. She stated that the Defendant eventually got "fed up" and stopped. The Defendant then entered the nearby bathroom to dress himself. Afterwards, the victim returned to the living room and continued playing with her siblings.

The victim agreed that at the Defendant's preliminary hearing, she testified that the Defendant only made her perform oral sex on him. She stated that she neglected to mention that the Defendant also anally penetrated her because she was nervous about testifying for the first time. However, she reiterated that "just before school started in 2019," the Defendant sexually penetrated her both orally and anally with his penis.

The State rested. After a Momon colloquy, the Defendant elected not to testify and did not present additional proof. Upon this evidence, the jury convicted the Defendant as charged. Following a sentencing hearing, the trial court imposed an effective sentence of eighty years' incarceration. The Defendant filed a timely but unsuccessful motion for new trial. This appeal followed.

## ANALYSIS

On appeal, the Defendant challenges the sufficiency of the convicting evidence. He argues that the victim's testimony contained numerous inconsistencies which render it

- 4 -

unreliable and that, accordingly, a rational jury could not have found the essential elements of rape of a child beyond a reasonable doubt. The State responds that the evidence was sufficient.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The foregoing standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Both "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

The Defendant was convicted of two counts of rape of a child. In order to sustain a conviction of rape of a child, the State was required to prove beyond a reasonable doubt that (1) the Defendant unlawfully sexually penetrated the victim, (2) who was more than eight years old but less than thirteen years old, and that (3) the Defendant acted intentionally, knowingly, or recklessly. Tenn. Code Ann. § 39-13-522. Sexual penetration is defined, in relevant part, as "sexual intercourse, . . . fellatio, [or] anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-501(7).

Viewing the evidence in the light most favorable to the State, we conclude that the evidence is sufficient to support the Defendant's convictions for rape of a child "on or about August 12, 2019," as charged in the indictment. Though the eleven-year-old victim was unable to recall the precise date of her rape, during her forensic interview on August 19, 2019, she stated that it occurred on "Monday or Tuesday" of the previous week, placing it "on or about August 12, 2019." The victim stated during her forensic interview that while her mother was away from home and the other adults were working, the Defendant asked her to go into a bedroom with "dark windows" and bunkbeds. The Defendant then told the victim to "suck his pee-pee" and the victim stated she did so for approximately two minutes. The Defendant then "put [his penis] in my bottom." The victim reiterated that she was both orally and anally penetrated during her trial testimony. Though she agreed that she testified at the Defendant's preliminary hearing that she was only forced to perform oral sex on the Defendant, she averred that she did so because she was very nervous at the time.

The Defendant identifies a number of inconsistencies in the victim's accounts of her rape which he alleges render her testimony so unreliable as to require reversal. The Defendant argues that the victim testified inconsistently as to whether the Defendant penetrated her anally, noting that she neglected to mention this during her preliminary hearing testimony. The Defendant also argues that the victim stated that the Defendant ejaculated during her forensic interview but did not mention this either during her preliminary hearing testimony or at trial. However, the Defendant brought these inconsistencies to the jury's attention both during his cross-examination of the victim and during closing arguments, and the jury resolved them in the State's favor by convicting the Defendant. See State v. Elkins, 102 S.W.3d 578, 582-83 (Tenn. 2003) (finding the evidence sufficient to support the defendant's conviction for rape of a child despite the inconsistencies in the victim's testimony); Byrge v. State, 575 S.W.2d 185, 191 (Tenn. 1992) ("The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as trier of fact."). Further, the State was not required to prove that the Defendant ejaculated during his rape of the victim in order to prove that he sexually penetrated the victim. See Tenn. Code Ann. § 39-13-501(7). Accordingly, we conclude that the evidence adduced at trial is sufficient beyond a reasonable doubt to sustain the Defendant's convictions.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., SPECIAL JUDGE